ILLINOIS GASOLINE DEALERS ASSOCIATION *et al.*, Plaintiffs-Appellants, v. THE CITY OF CHICAGO *et al.*, Defendants-Appellees.

First District (4th Division)   No. 85—0988

Opinion filed March 20, 1986.

George W. Keeley and Michael T. Reid, both of Halfpenny, Hahn & Roche, of Chicago (Halfpenny, Hahn & Roche, of counsel), for appellants.

James D. Montgomery, Corporation Counsel, of Chicago (Mary K. Richford and Julie Elena Brown, Assistant Corporation Counsel, of counsel), for appellees.

JUSTICE JIGANTI delivered the opinion of the court:

This appeal concerns the constitutionality of the Chicago Leaded Gasoline Tax Ordinance (Chicago, Illinois, Municipal Code 1984, ch. 200.9, eff. January 1, 1985 (Municipal Code)) which imposes a 7¢ tax on the sale of leaded gasoline in Chicago. The plaintiffs, Illinois Gaso-

line Dealers Association, Dave's Standard Service, Dave Goldberg, Standard Service Center and William Blattner, brought this action in the circuit court of Cook County for declaratory judgment and injunctive relief against the defendants, city of Chicago, Chicago Department of Revenue, and Ira J. Edelson, director of the Chicago Department of Revenue (city), challenging the constitutional validity of the leaded gasoline tax ordinance on several grounds. The trial court dismissed the plaintiffs' action (Ill. Rev. Stat. 1983, ch. 110, par. 2—619(a)), and this appeal follows.

The plaintiffs attack the constitutionality of the ordinance on three bases: (1) that the ordinance is not a tax but a regulatory measure which is preempted by the Federal Clean Air Act (42 U.S.C.A. sec. 7401 *et seq.* (West 1983)); (2) that the ordinance violates the uniformity of taxation requirement in article IX, section 2, of the 1970 Illinois Constitution; and (3) that the ordinance is an attempt to regulate and control air pollution which is beyond the authority of the city's home rule unit powers granted under article VII, section 6(a) of the 1970 Illinois Constitution.

The ordinance was adopted by the Chicago city council pursuant to its home rule unit power to tax conferred by the 1970 Illinois Constitution. (Ill. Const. 1970, art. VII, sec. 6(a).) The ordinance imposes a tax at the rate of 7¢ per gallon on "the privilege of purchasing leaded motor fuel within the City of Chicago." The tax is imposed on the purchaser, but collection and remittance of the tax is placed on the retail dealer or distributor, who is subject to fines and other penalties for failure to comply with any of the provisions of the ordinance.

The leaded gas tax ordinance is first challenged on the ground that it is not a tax but a regulatory measure in effect enacted for the sole purpose to control and regulate the sale of leaded gasoline in Chicago, an area which is preempted by the Federal Clean Air Act. 42 U.S.C.A. sec. 7401 *et seq.* (West 1983).

The Federal Clean Air Act, which authorizes the Federal Environmental Protection Agency (EPA) to issue regulations controlling or prohibiting the use of fuels found to endanger the public health, specifically preempts State control of the use of motor fuels unless the regulations are part of the State's clean air implementation plan and are approved by the EPA. 42 U.S.C.A. sec. 7545(c)(4)(C) (West 1983).

■ The plaintiffs assert that the ordinance was enacted in an attempt to regulate the use of leaded gasoline in Chicago without first obtaining the necessary State and Federal approvals required under the Federal Act. The judicial role in construing this ordinance is to

ascertain and give effect to the intent of the city council. (*City of Springfield v. Board of Election Commissioners* (1985), 105 Ill. 2d 336, 340-41, 473 N.E.2d 1313.) Collateral purposes or motives behind the passage of the ordinance are beyond the scope of judicial inquiry. (*Deerfield Park District v. Progress Development Corp.* (1961), 22 Ill. 2d 132, 140, 174 N.E.2d 850.) The plaintiffs' assertion does not illuminate the objective of the ordinance but rather directs judicial inquiry into the possible motives of the city council in passing the ordinance. The intent of the city council in passing the leaded gas tax ordinance is best determined from the language of the ordinance and where the language is unambiguous, a court must enforce the law as enacted. (*County of Du Page v. Graham, Anderson, Probst & White, Inc.* (1985), 109 Ill. 2d 143, 151, 485 N.E.2d 1076.) The ordinance here, under its clear and unambiguous language, is a taxing measure with the sole purpose of raising revenue. It provides that the ultimate incidence of and liability for the tax is to be borne by the purchaser. The duties of collecting and remitting the tax imposed on the retail dealer or distributor only makes those persons the agents of the city for the purposes of obtaining the tax from the purchaser. (*Jacobs v. City of Chicago* (1973), 53 Ill. 2d 421, 424, 292 N.E.2d 401.) There are no prohibitions or conditions contained in the ordinance proscribing or prescribing the time, place and manner of the sale of leaded gasoline. Nor do the penalties and fines in the ordinance imposed on retail dealers and distributors for failure to comply with the ordinance convert the ordinance into a regulatory measure. See *Jacobs v. City of Chicago* (1973), 53 Ill. 2d 421, 424, 292 N.E.2d 401.

■ Furthermore, it cannot be inferred solely from the burden imposed on the sale of leaded gasoline that a prohibition instead of a tax was intended by the city council. A tax within the city's lawful power will not be judicially stricken down simply because its collateral effect may result in restricting or even destroying the market for leaded gasoline. (See *Lehnhausen v. Lake Shore Auto Parts Co.* (1973), 410 U.S. 356, 360, 35 L. Ed. 2d 351, 355, 93 S. Ct. 1001, 1004; *A. Magnano Co. v. Hamilton* (1934), 292 U.S. 40, 44-47, 78 L. Ed. 1109, 1114-16, 54 S. Ct. 599, 601-03.) In summary, while the collateral intent of the city council and the resultant effect of the ordinance may have been to discourage the purchase of leaded gasoline and to affect air quality control standards, the plain language of the ordinance does not indicate a purpose on the part of the city council to impose a prohibition instead of a tax on the sale of leaded gasoline. Thus, the ordinance was properly within the city's taxing authority. Consequently, as the ordinance was not a regulatory measure, it necessarily follows

that no Federal preemption occurred.

■ The plaintiffs next contend that the ordinance is in violation of the uniformity of taxation clause of article VII, section 2, of the 1970 Illinois Constitution, which requires that classifications created by revenue laws must be reasonable, with each class taxed uniformly. (Ill. Const. 1970, art. VII, sec. 2.) The plaintiffs initially assert that under the tax collection process set forth in the ordinance, the tax is not uniformly imposed on all purchasers of leaded gasoline and unconstitutionally excludes commercial and industrial purchasers from the tax. The ordinance's tax collection scheme requires that a distributor who sells leaded gasoline to a retail dealer shall collect the tax and the retail dealer shall in turn collect the tax from the purchaser. (Municipal Code 1984, ch. 200.9, par. 200.9—2.B.) The plaintiffs argue that under this procedure purchasers who bypass the retail dealer, such as commercial and industrial purchasers, and who buy directly from the distributor avoid collection of the tax which they otherwise would have paid if they had purchased leaded gasoline from a retail dealer. This reasoning is flawed by the plain language of the ordinance. The ordinance states that the tax is imposed upon the sale of leaded motor fuel in the city of Chicago and the tax shall be paid by the purchaser. (Municipal Code 1984, ch. 200.9, par. 200.9—2.A.) While the ordinance does not define "purchaser," it does define who is a distributor and retail dealer. A "distributor" is "any person who either produces, refines, blends, compounds or manufactures leaded motor fuel in this City or transports or has transported leaded motor fuel to a location within the City or receives leaded motor fuel in this City on which this tax has not been paid, or in any way sells leaded motor fuel to a retail dealer for purchase or resale in the City." (Municipal Code 1984, ch. 200.9, par. 200.9—1.A.) A "retail dealer" is "any person who is engaged in the business of selling leaded motor fuel in the City of Chicago to a purchaser for use or consumption and not for resale in any form." (Municipal Code 1984, ch. 200.9, par. 200.9—1.A.) Thus, under the plain language of the ordinance, any person who sells leaded gasoline to a purchaser other than to a "retail dealer," as defined under the ordinance, is a "retail dealer" and those purchasers are liable for the tax. This is true regardless of whether the seller may also be a "distributor" with regard to other transfers of leaded fuel. Therefore, contrary to the plaintiffs' assertion, the tax uniformly applies to all purchasers of leaded gasoline, regardless of whether the leaded fuel was purchased by consumer, commercial or industrial purchasers.

■ The plaintiffs further assert that the classification of motor

fuel on the basis of lead content for tax purposes is arbitrary and unreasonable and has no rational basis for imposing a tax on purchasers of leaded gasoline. We find no merit in this argument. Classifications, contained in revenue laws are presumed constitutional under section 2, article VII, of the Illinois Constitution (Ill. Const. 1970, art. VII, sec. 2), so long as there is a reasonable basis for the classifications created by statute and each member of the class is treated uniformly. (*Williams v. City of Chicago* (1977), 66 Ill. 2d 423, 432, 362 N.E.2d 1030, *cert. denied* (1977), 434 U.S. 924, 54 L. Ed. 2d 282, 98 S. Ct. 402.) The reasons justifying the classification need not appear on the face of the statute, and the classification will be upheld if any reasonable basis for the classification can be found to sustain it. *Mlade v. Finley* (1983), 112 Ill. App. 3d 914, 919-20, 445 N.E.2d 1240, quoting *Department of Revenue v. Warren Petroleum Corp.* (1954), 2 Ill. 2d 483, 490, 119 N.E.2d 215.

We conclude that there is a reasonable basis for the classification imposing a tax on leaded gasoline sales. The city in enacting this ordinance may have considered the adverse environmental impact the use of leaded gasoline produces and as a consequence may have sought to discourage the sales of leaded gasoline and favor the consumption of unleaded gasoline. This consideration would furnish a sufficient justification for the classification which has not been negated by the plaintiffs. (See, *e.g., Adler v. Illinois Bell Telephone Co.* (1978), 72 Ill. 2d 295, 381 N.E.2d 294.) Therefore, as the ordinance taxes all purchasers of leaded gasoline uniformly and the classification is reasonable, section 2 of article VII of the 1970 Illinois Constitution is satisfied.

Finally, the plaintiffs argue that the city in enacting this ordinance violated its grant of home rule authority under article VII, section 6(a), of the 1970 Illinois Constitution, which provides: "Except as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs, including but not limited to the power *** to tax ***." Ill. Const. 1970, art. VII, sec. 6(a).

Home rule units are granted broad powers of self-government, including the power to tax, and the constitution mandates that such home rule powers be liberally construed. (Ill. Const. 1970, art. VII, sec. 6(m); *City of Carbondale v. Yehling* (1983), 96 Ill. 2d 495, 497, 451 N.E.2d 837.) However, section 6 limits a home rule unit's taxing power in several ways. A home rule unit may not impose taxes on income, earnings or occupations in the absence of an authorizing statute by the General Assembly. (Ill. Const. 1970, art. VII, sec. 6(e).) The

General Assembly may deny or limit a home rule unit's power to tax by the vote of three-fifths of the members elected to each house. (Ill. Const. 1970, art. VII, sec. 6(g).) Home rule units may exercise home rule powers concurrently with the State to the extent that the General Assembly does not "specifically limit the concurrent exercise or specifically declare the State's exercise to be exclusive." Ill. Const. 1970, art. VII, sec. 6(i).

Plaintiffs argue that the ordinance does not pertain to the "government and affairs" of the city, and, therefore, the ordinance is not within the city's taxing authority under section 6(a). The plaintiffs again renew their argument that the tax ordinance is in effect a regulation of the environment, which is inherently a matter of exclusive statewide concern. The plaintiffs assert that the Environmental Protection Act (Ill. Rev. Stat. 1983, ch. 111½, par. 1001 *et seq.*), whose purpose is to "establish a unified, state-wide program *** to restore, protect and enhance the quality of the environment" (Ill. Rev. Stat. 1983, ch. 111½, par. 1002(b)) demonstrates a legislative intent to exclude environmental matters from the "government and affairs" of the city. The plaintiffs cite as further support for their contention *City of Des Plaines v. Chicago & North Western Ry. Co.* (1976), 65 Ill. 2d 1, 357 N.E.2d 433, which invalidated a home rule noise control ordinance on the basis that the control of noise emissions was not a matter of local concern. *City of Des Plaines* is distinguishable, however, because it involved the issue of a home rule unit's power to regulate. Here, we are concerned with the city's power to tax.

That the regulation of environmental matters is a matter of statewide concern does not prohibit a home rule unit from enacting a consumer tax regarding the sale of leaded gasoline. "The power to regulate and the power to tax are separate and distinct powers." (*Town of Cicero v. Fox Valley Trotting Club, Inc.* (1976), 65 Ill. 2d 10, 17, 357 N.E.2d 1118.) Extensive regulation on the State level does not preempt a home rule unit's taxing powers. *Chicago Park District v. City of Chicago* (1986), 111 Ill. 2d 7, 13; *Town of Cicero v. Fox Valley Trotting Club, Inc.* (1976), 65 Ill. 2d 10, 16, 357 N.E.2d 1118; *Mulligan v. Dunne* (1975), 61 Ill. 2d 544, 549, 338 N.E.2d 6.

*Ampersand, Inc. v. Finley* (1975), 61 Ill. 2d 537, 338 N.E.2d 15, the only case the plaintiffs refer to in which a home rule unit tax was struck down is distinguishable from the instant case. In *Ampersand,* the court invalidated a tax on the filing of civil cases in Cook County as an unconstitutional burden on the judicial system, an area committed exclusively to the State's concern by the State constitution. (See *Town of Cicero v. Fox Valley Trotting Club, Inc.* (1976), 65 Ill. 2d 10,

20, 357 N.E.2d 1118; see also *Board of Education v. City of Peoria* (1979), 76 Ill. 2d 469, 394 N.E.2d 399 (home rule unit may not impose tax on school district where State has constitutional power over schools).) Here there is no constitutional provision recognizing a comparable State interest in the taxation of sales of leaded gasoline. Nor has the General Assembly acted pursuant to its authority to limit or deny the city's power to levy the tax imposed. Further, the Environmental Protection Act does not reflect a statewide constitutional interest in the regulation of environmental matters such that the city is preempted from imposing its home rule power to tax. See *City of Des Plaines v. Chicago & North Western Ry. Co.* (1976), 65 Ill. 2d 1, 7, 357 N.E.2d 433.

Accordingly, for the reasons stated, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

JOHNSON and McMORROW, JJ., concur.