JAMES CONCANNON, Indiv. and on behalf of all similarly situated, Plaintiffs-Appellants, v. ILLINOIS BELL TELEPHONE COMPANY, Defendant-Appellee (Anthony N. Fratto, Comptroller, of the City of Chicago, Intervening Party-Plaintiff).—MICHAEL JAMES FROST, Indiv. and on behalf of all similarly situated, Plaintiffs, v. THE CITY OF CHICAGO *et al.*, Defendants.

First District (1st Division)   No. 85—3016

Opinion filed November 10, 1986.

William J. Harte, Ltd., and Edward M. Burke, both of Chicago (William J. Harte, Edward M. Burke, and Jeffrey B. Whitt, of counsel), for appellants.

L. Bow Pritchett and John T. Lenahan, both of Chicago, for appellee Illinois Bell Telephone Company.

Michael James Frost, *pro se*, and Michael J. McArdle, Chartered, both of Chicago, for other appellees.

PRESIDING JUSTICE QUINLAN delivered the opinion of the court:

This case raises the issue of the applicability of the Chicago messages tax ordinance (Municipal Code of Chicago, sec. 132—30 *et seq.* (1979)) to the transmission of interstate messages originating or terminating within the city of Chicago and the taxability of the services related to such transmissions. On September 17, 1981, the plaintiff, James Concannon, a taxpayer, individually, and on behalf of all those similarly situated, filed a lawsuit, later amended, alleging that Illinois

Bell Telephone Company (Illinois Bell) failed to report or remit messages taxes on interstate messages as required under the messages tax ordinance of the city of Chicago (Municipal Code of Chicago, sec. 132—30 *et seq.* (1979)). The comptroller of the city of Chicago, on December 4, 1981, also issued a notice of additional taxes to Illinois Bell payable for the period of November 1975 through June 1979 that was apparently for interstate messages originating or terminating within the city of Chicago during that period and that had not been remitted by Illinois Bell to the city of Chicago.

Thereafter, Illinois Bell filed a petition for writ of *certiorari* to the circuit court of Cook County requesting that this determination of the comptroller be set aside and held for naught. Illinois Bell also filed a complaint for declaratory judgment in the circuit court of Cook County against the city of Chicago (city) and the comptroller, wherein Illinois Bell sought a determination that the comptroller's continued interpretation of the city's messages tax ordinance, specifically that a tax was due from Illinois Bell for the transmission of interstate messages, was illegal, invalid and unconstitutional.

Subsequently, on September 24, 1982, Michael James Frost, a telephone subscriber, individually, and on behalf of all those similarly situated, filed a lawsuit against the city of Chicago, the city's comptroller, and Illinois Bell alleging, as Illinois Bell had in its suit, that the comptroller's interpretation and application of the Chicago messages tax ordinance (Municipal Code of Chicago, sec. 132—30 *et seq.* (1979)) to interstate messages was unlawful and sought a temporary and permanent injunction against the city's comptroller from continuing this practice.

On May 12, 1983, all of these actions were consolidated by the circuit court into the Concannon class action that had been filed previously. Following a partial settlement of a number of issues involved in the case, on June 1, 1985, the parties filed cross-motions for declaration of rights on stipulated facts regarding the tax liability of Illinois Bell to the city for its interstate messages revenues. The plaintiff Concannon's class action motion sought a declaration that interstate revenue was taxable retroactive to 1956, the effective date of the Chicago messages tax ordinance (Municipal Code of Chicago, sec. 132—30 *et seq.* (1979)). The city of Chicago, by its motion, sought retroactive recovery from November 1, 1975, together with an award of a penalty as provided in the messages tax ordinance. In its motion, Illinois Bell sought a declaration that its gross receipts from interstate messages were not subject to the Chicago messages tax ordinance. The plaintiff Frost filed a memorandum of law in support of Illinois Bell's position.

The stipulation of facts, for purposes of the motions of the parties, provided:

"(a) That all times since January 1, 1956, the effective date of the Chicago Messages Tax Ordinance, until the present, Illinois Bell has derived gross receipts from the business of transmitting interstate messages. Interstate messages are defined as message transmissions that either originate or terminate outside the State of Illinois. For the purposes of said motions, interstate messages are defined as message transmissions that either (i) originate within the corporate limits of the City of Chicago and terminate outside the State of Illinois or (ii) terminate within the corporate limits of the City of Chicago and originate outside the State of Illinois.

(b) At all times since January 1, 1956, until the present, Illinois Bell has not billed its customers any amounts pursuant to Section 36(a) of the Public Utilities Act, Ill. Rev. Stat. ch. 111⅔, sec. 36(a) in order to recover any Chicago Messages Tax expense resulting from its gross receipts from interstate message transmissions originating or terminating within the corporate limits of the City of Chicago and related services.

(c) That at all times since January 1, 1956, the effective date of the Chicago Messages Tax Ordinance, until the present, Illinois Bell has not paid to the City of Chicago messages tax on gross receipts from the transmission of interstate messages originating or terminating within the corporate limits of the City of Chicago and related services."

On September 11, 1985, the trial court found and declared that "gross receipts from the transmission of interstate messages originating or terminating within the corporate limits of the City of Chicago and related services are not subject to the Chicago Messages Tax Ordinance," and that "the City of Chicago lacks legal authority to apply said Messages Tax Ordinance to said interstate revenue." The court then entered judgment in favor of Illinois Bell against the plaintiff Concannon class action and the city of Chicago. Certain issues regarding directory advertisement were taken under advisement by the trial court. However, the trial court expressly found, pursuant to Supreme Court Rule 304(a) (87 Ill. 2d R. 304(a)), that there was no just reason for delaying enforcement or appeal of the order. The plaintiff Concannon's class action has now appealed from this order. The city of Chicago did not join in the appeal of the court's September 11, 1985, order.

We affirm.

On appeal, the Concannon class action argues that the plain language of the ordinance (Municipal Code of Chicago, sec. 132—30 *et seq.* (1979)) requires Illinois Bell to report and remit a percentage of its gross receipts from the transmission of interstate messages to the city of Chicago as a messages tax; the language of the ordinance is not, on its face, limited to intrastate calls, and thus, must be interpreted broadly; the language of the ordinance is clearly distinguishable from the Illinois Messages Tax Act (Ill. Rev. Stat. 1985, ch. 120, par. 467.1 *et seq.*), and is not controlled by the supreme court's decision in *Illinois Bell Telephone Co. v. Allphin* (1982), 93 Ill. 2d 241, 443 N.E.2d 580; and finally, the imposition of a tax on interstate commerce was not, at the time of adoption of the ordinance, and is not now, an unconstitutional burden on interstate commerce. Alternatively, Concannon argues that, even if the ordinance could not at the time of its enactment tax interstate messages, it later could do so lawfully, and therefore, the tax here should be allowed to be imposed, apparently from the time of the asserted change in constitutional limitations on interstate taxes.

The defendant, Illinois Bell, joined by plaintiff-appellee, Michael James Frost, argues that the issue here has been determined by the Illinois Supreme Court in *Adler v. Illinois Bell Telephone Co.* (1978), 72 Ill. 2d 295, 381 N.E.2d 294, and, subsequently, expressly affirmed by the court in *Illinois Bell Telephone Co. v. Allphin* (1982), 93 Ill. 2d 241, 443 N.E.2d 580. Illinois Bell points out that the supreme court construed the exact city of Chicago messages tax ordinance (Municipal Code of Chicago, sec. 132—30 *et seq.* (1979)) in the *Adler* case. There, the plaintiff, a taxpayer like plaintiff Concannon here, argued that the city's application of its tax to intrastate messages only, created an unreasonable classification and resulted in an unreasonable loss of revenue which the court rejected. The court held, however, that the city's failure to apply its messages tax to interstate revenue, while applying it to intrastate revenue, did not create an improper classification or result in a denial of equal protection of the laws. Thus, Illinois Bell maintains that decision held that the city's messages tax ordinance did not apply to interstate messages revenues.

This decision was therefore affirmed, Illinois Bell contends, in the *Allphin* decision, where the supreme court explained that its decision in *Adler* was an application of the principle that statutes must be interpreted according to the law as it existed when the particular statute was adopted. The court specifically stated, Illinois Bell continues, that it had applied this principle in *Adler* and construed the city of Chicago messages tax ordinance (Municipal Code of Chicago, sec.

132—30 *et seq.* (1979)) as not applicable to interstate revenues, even though it was not so limited on its face, because the Federal law at the time the ordinance was adopted barred such taxes on interstate commerce. Thus, Illinois Bell submits that the supreme court has authoritatively construed the ordinance to not include interstate messages, because under the law in effect at that time such a tax was illegal, and this interpretation was binding on the trial court here, and is also binding on this court.

The plaintiff Concannon, on the other hand, contends that the decisions in *Adler* and *Allphin* are not controlling. *Adler*, the plaintiff argues, was a case decided on the pleadings and, thus, did not determine that the city's ordinance was limited to intrastate messages but, rather, merely held that it was not unconstitutional for an ordinance to distinguish between interstate and intrastate messages. If anything, the plaintiff asserts, the *Adler* case actually, by implication, indicated that the city of Chicago could, if it desired, impose a gross receipts tax on interstate messages. Furthermore, the plaintiff argues, the *Allphin* case involved an attempt by the Illinois Department of Revenue to collect taxes on interstate transmission of messages and the court there held that the inclusion of the words "in this state," in the State statute, made it clear that the legislature only intended to tax intrastate messages. There is, the plaintiff points out, no such limiting language in the Chicago messages tax ordinance (Municipal Code of Chicago, sec. 132—30 *et seq.* (1979)).

Finally, the plaintiff contends that Illinois Bell, appellee Frost, and the *Allphin* court failed to address the factual reality that the Chicago messages tax ordinance does not, and did not, risk the imposition of cumulative burdens or multiple taxation upon the business of transmitting interstate messages. This, the plaintiff argues, distinguishes this case involving the Chicago ordinance from the United States Supreme Court cases cited by the Illinois Supreme Court in *Allphin*, which, the court stated, held that Federal law barred taxes on interstate commerce at the time the Messages Act was enacted. Rather, the Concannon plaintiffs continue, the United States Supreme Court case of *Western Live Stock v. Bureau of Revenue* (1938), 303 U.S. 250, 82 L. Ed. 823, 58 S. Ct. 546, decided 18 years before the Chicago messages tax ordinance, should have been considered by the *Allphin* court. That case, Concannon asserts, did recognize that a tax on interstate commerce could be valid if it did not create a risk of multiple taxation or create a cumulative burden on interstate commerce, out of proportion to the local government services from which the activity benefited. Such a burden is not present, the Supreme Court in *West-*

*ern Live Stock* observed, where the tax is imposed equally on all transactions within the State and not solely on the privilege of engaging in interstate commerce. Here, contrary to its label as an occupation tax, the plaintiff argues that the Chicago messages tax ordinance (Municipal Code of Chicago, sec. 132—30 *et seq.* (1979)) is a tax in substance and, in fact, a tax on the customer and not on the utility. This is so because the economic burden of the tax is on the customer and not on the utility and, thus, the messages tax here is not a tax on the privilege of doing business.

█ We disagree with the Concannon class action and agree with the contention of Illinois Bell that the *Adler* and *Allphin* decisions are controlling here. While the decision in the *Adler* case was made only on the pleadings, the court in *Allphin* clearly set forth what it believed it had ruled in *Adler*, stating:

> "Statutes are to be interpreted in a manner consistent with 'the state of the law existent at the time of their enactment.' [Citation.] Adhering to this principle this court in *Adler v. Illinois Bell Telephone Co.* (1978), 72 Ill. 2d 295, 297, construed a city of Chicago message tax adopted when' Federal constitutional law barred taxes on interstate revenues as not applicable to such revenues even though the ordinance on its face was not limited to intrastate calls." *Illinois Bell Telephone Co. v. Allphin* (1982), 93 Ill. 2d 241, 249, 443 N.E.2d 580.

Therefore, it is clear that the supreme court construed the Chicago messages tax ordinance (Municipal Code of Chicago, sec. 132—30 *et seq.* (1979)) as not applicable to interstate messages, and, of course, this construction is binding on this court. *Super Liquors, Inc. v. Illinois Liquor Control Com.* (1983), 113 Ill. App. 3d 229, 232, 446 N.E.2d 945.

█ Furthermore, we also reject, as without merit, plaintiff Concannon's contention that the basis of the supreme court's decision in *Allphin* was that the State statute had employed the qualifying phrase "in this state" to modify messages, thus indicating that the legislature had intended only to tax intrastate messages. Any fair reading of the *Allphin* case certainly indicates that this was only an additional reason for its construction of the statute there and that the primary reason was the presumption that the legislature intended to enact a valid taxing statute. As the court there stated:

> "[T]he law which prevailed at the time the Messages Tax Act was adopted was that a State was prohibited by the commerce clause from imposing an occupation tax on interstate commerce, regardless of whether the enterprise being taxed also

engaged in commerce confined to the taxing state." *Illinois Bell Telephone Co. v. Allphin* (1982), 93 Ill. 2d 241, 253, 443 N.E.2d 580.

Further, the supreme court in *Allphin* did consider whether the coverage of the statute, and, thus, the ordinance here, might be expanded by subsequent interpretations of the commerce clause. The court expressly found, contrary to Concannon's contention here, that the scope of the messages enabling act (Ill. Rev. Stat. 1985, ch. 24, par. 8—11—2), and, thus, the Chicago messages tax ordinance (Municipal Code of Chicago, sec. 132—30 *et seq.* (1979)), also was fixed by the conditions which existed and the law that prevailed at the time the statute was adopted. Thus, the court said that the statute did not expand, nor was it intended to expand, with any changes in constitutional law.

■ Moreover, Concannon's reliance on *Western Live Stock v. Bureau of Revenue* (1938), 303 U.S. 250, 82 L. Ed. 823, 58 S. Ct. 546, is misplaced, since that case involved a tax on the sale of advertising space, which was characterized by the Supreme Court there as an excess tax on a local business activity and was separate and distinct from interstate commerce. Concannon has cited *Douglas v. Glacier State Telephone Co.* (Alaska 1980), 615 P.2d 580, which did rely on *Western Live Stock* to uphold a local messages tax on interstate telephone calls in Kenal Peninsula Borough, Alaska. However, *Douglas* is also clearly distinguishable from the present case in that the *Douglas* case involved a use tax, and the present case, contrary to plaintiff Concannon's assertions, involves an occupational tax. The nature of a tax is determined, not, as plaintiff Concannon argues, by its economic incidence, but rather by the legal incidence of the tax. (*Cf. Commercial National Bank v. City of Chicago* (1982), 89 Ill. 2d 45, 432 N.E.2d 227; see *S. Bloom, Inc. v. Korshak* (1972), 52 Ill. 2d 56, 284 N.E.2d 257; *First National Bank v. Jones* (1971), 48 Ill. 2d 282, 269 N.E.2d 494; *National Bank v. Isaacs* (1963), 27 Ill. 2d 205, 188 N.E.2d 704.) The tax here, like the State messages tax in *Allphin*, is an occupation tax, *i.e.*, a tax "imposed upon all persons engaged in the business of transmitting messages by means of electricity." (Municipal Code of Chicago, sec. 132—30 *et seq.* (1979); *cf. Commercial National Bank v. City of Chicago* (1981), 89 Ill. 2d 45, 432 N.E.2d 227; *Paper Supply Co. v. City of Chicago* (1974), 57 Ill. 2d 553, 317 N.E.2d 3; *Winter v. Barrett* (1933), 352 Ill. 441, 186 N.E. 113; see *Reif v. Barrett* (1933), 355 Ill. 104, 188 N.E. 889.) Consequently, at the time the ordinance was enacted by the city of Chicago, pursuant to the authority granted by the State enabling act (Ill. Rev. Stat.

1985, ch. 24, par. 8—11—2), the city could not lawfully impose an occupation tax on the transmission of interstate messages. (See *Illinois Bell Telephone Co. v. Allphin* (1982), 93 Ill. 2d 241, 443 N.E.2d 580; *Adler v. Illinois Bell Telephone Co.* (1978), 72 Ill. 2d 295, 381 N.E.2d 294.) Furthermore, the city could not then, nor can it now, enact an occupation tax on telephone messages without specific legislative approval. Ill. Const. 1970, art. VII, sec. 6(e)(2); *Commercial National Bank v. City of Chicago* (1981), 89 Ill. 2d 45, 50, 432 N.E.2d 227; see *Paper Supply Co. v. City of Chicago* (1974), 57 Ill. 2d 553, 317 N.E.2d 3.

Accordingly, for the reasons set forth above, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

CAMPBELL and BUCKLEY, JJ., concur.